## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| EDWIN STOCKWELL, | : | |
| 821 Arlington Ave. | : | |
| Mansfield, OH 44903, | : | **Civil Action No.    15cv3116** |
| | : | |
| Plaintiff, | : | |
| | : | JUDGE |
| v. | : | |
| | : | MAGISTRATE JUDGE |
| ASHLAND UNIVERSITY, | : | |
| c/o James L. Kirtland | : | |
| 401 College Ave. | : | |
| Ashland, OH 44805, | : | |
| | : | |
| Defendant. | : | **JURY DEMAND ENDORSED HEREON** |

## COMPLAINT

**I.    Preliminary Statement**

1.    This action seeks monetary, declaratory, and equitable relief for the willful violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-34, committed when Defendant chose the oldest and longest-tenured Senior Programmer Analyst, Plaintiff, to discharge in a reorganization of its Information Technology department, distributing his duties to three substantially younger Senior Programmer Analysts (SPA) and two slightly younger employees, an SPA and the SPA Supervisor even though he was equally or better qualified to be retained and but for his age and age-stereotypical notions about his health declining with age and his relative inability to readily learn new or different duties would have been retained.

-- 1 --

## II. Jurisdiction and Venue

2. This Court has jurisdiction pursuant to the ADEA, 29 U.S.C. § 626(c), and 28 U.S.C. §§ 1331 (federal question); 1343 (civil rights).

3. Wages, salary, employment benefits, and other compensation denied or lost to Plaintiff because of Defendant's violation and interest on those damages may be awarded pursuant to the ADEA, 29 U.S.C. § 626(b); (c).

4. An additional amount in liquidated damages equal to the sum of wages, salary, employment benefits, and other compensation denied or lost to Plaintiff plus interest may be awarded pursuant to the ADEA, 29 U.S.C. § 626(b), incorporating by reference 29 U.S.C. § 216(b), because Defendant's violation of the ADEA was willful.

5. Declaratory, injunctive, and equitable relief, including reinstatement, are sought pursuant to 28 U.S.C. §§ 2201; 2202, and the ADEA, 29 U.S.C. § 626(b); (c).

6. Costs and attorneys' fees may be awarded pursuant to the ADEA, 29 U.S.C. § 626(b), and Civ.R. 54.

7. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 and LR 3.8 because the claims arose in and around Ashland County, Ohio, where Defendant conducted its operations and employed and discharged Plaintiff.

## III. Parties

8. Plaintiff Edwin Stockwell is a 59 year old resident of Ohio, was employed, ultimately as a Senior Programmer Analyst, by Defendant from September 17, 1997, to February 14, 2014, and paid $68,000 plus fringe benefits annually; and, at all times material to this action, competently performed his job duties.

9. Defendant Ashland University, a corporation for non-profit registered in the State of Ohio, is a private liberal arts and sciences institution of higher education and employs more than 20 full-time employees.

**IV.    Facts**

10. In late 2013 and early 2014, Defendant employed five Senior Programmer Analysts ("SPA") whose primary job duties were supporting Information Technology, software, and operations across Defendant's campus areas and departments.

11. Each of the five had worked in a variety of areas and departments during his or her tenure.

12. While each of the five had at any particular time one or more areas or departments to which he or she was assigned, all five covered for a SPA on vacation, out on sick or other leave, or unable to provide support to the assigned area or department.

13. Each SPA was also called on to troubleshoot another SPA's assignment area or department.

14. To facilitate the interchange of SPAs to perform each other's assignments, Defendant used the same programming language and software throughout its Information Technology department and for the campus areas or departments served by the department.

15. Regardless of the area or department to which a SPA was primarily assigned, each SPA was expected and did readily understand the way in which a different area or department applied the programming language and software to its own needs.

16. While new programming language or software would occasionally be acquired, each SPA was expected to master in relatively short order that new language or software..

17. The last annual performance review Plaintiff was given before he was terminated rated him "competent" or "excellent" in all categories, a level of performance he had consistently maintained throughout his tenure.

18. On February 14, 2014, Defendant's Vice President for Information Technology Curtis White told Plaintiff that his job was being eliminated due to budget cuts.

19. After Plaintiff pressed Defendant for an explanation of why he was selected and the others retained, Defendant stated that the decision came down to an analysis of which position's duties could be covered by the remaining employees and with the least impact on business operations.

20. Before his termination Plaintiff was ready, willing, and able to perform the duties of the other SPAs and, due to his years of experience and variety of assignments, equally or better positioned than the other SPAs to enhance business operations.

21. Defendant's decisions about which SPAs could quickly and efficiently adapt to the duties performed by the other SPAs were tainted by an age stereotypical notion about Plaintiff's inability to learn new matters and an assumption that Plaintiff's duties could be more readily reassigned than those of the substantially younger SPAs.

22. Defendant's decisions about which duties of SPAs could most quickly and efficiently be performed by his supervisor, Don Prezioso, Director of Administrative IT Services, approximately age 45, were based on an unfounded prediction that Supervisor Prezioso would be considerably better at performing Plaintiff's duties than the duties of substantially younger SPAs.

23. The retained SPAs were Robert Birkes, age 38; Marshall Green, age 55; Rebecca Matney, age 40; and Daniel Parrigan, age 38.

24. Despite projections of budget crises, Defendant hired SPA Matney in 2013.

25. During the period before and at the time it made the decision to terminate Plaintiff, Defendant assigned him to supporting programming in its Office of Development.

26. Defendant's Office of Development is responsible for fundraising, mainly through alumni and their families, and was tasked in late 2013 and early 2014 by Defendant with increasing its efforts and productivity as budget cuts became unavoidable due to a decrease in student enrollment and tuition that had not been offset by external funding.

27. At the time Defendant made the decision to terminate Plaintiff, he had been hospitalized for four days and was on medical or sick leave of two weeks for an infection, sepsis, which he developed from a prostate biopsy.

28. Defendant knew at the time it made the decision to terminate Plaintiff that he had undergone a prostate biopsy.

29. Defendant knew that a prostate biopsy is performed when a health care provider has reason to suspect that a patient has developed cancer.

30. Defendant associated the development of prostate cancer with the age of males.

31. In the period before Defendant made the decision to terminate Plaintiff, he had taken several lengthy medical leaves for serious health conditions, some requiring hospitalization and suggesting chronic and degenerative diseases, such as Parkinson's, and his back condition, for which he had surgery in 2006, was being accommodated by Defendant's provision of a special chair and desk.

32. SPAs Birkes, Matney, and Parrigan rarely took medical or sick leave, and Defendant neither knew nor suspected that they had serious health conditions.

33. Defendant considered at the time it made the decision to terminate Plaintiff that the prospect of medical or sick leave being taken in the near future by Plaintiff was far greater than the prospect of such leave being taken by SPAs Birkes, Matney, and Parrigan.

34. During the period before Defendant made the decision to terminate Plaintiff, he made several requests to Supervisor Prezioso for training in other areas, such as Sequential Query Language (SQL), but his requests were always denied, purportedly for budgetary reasons.

35. Defendant relied on age stereotypical notions about Plaintiff in part to avoid confronting the difficult choice of terminating Ms. Matney, who had just recently been hired.,

36. The Executive Director of Information Technology is near the top of the chain-of-command for SPAs.

37. Had Defendant's decision to terminate Plaintiff ignored his age and age-stereotypical notions, it would have had to avoid the appearance of improper nepotism if it retained Ms. Matney or face disappointing Mr. Matney if it terminated her.

38. Defendant knew about its obligation under the ADEA to avoid making employment decisions that turned on age and age-stereotypical notions and recklessly disregarded that obligation.

39. Despite a reasonably diligent effort to secure employment comparable to his position with Defendant, Plaintiff has been unable to do so and has lost the wages, benefits, and other compensation he had been earning as its employee.

**V. Cause of Action**

40. Paragraphs 1 through 41 are incorporated herein as if fully set forth.

41. By choosing Plaintiff, the oldest and longest-tenured Senior Programmer Analyst, to discharge in a reorganization of its Information Technology department, distributing his duties to three substantially younger SPA and two slightly younger employees, an SPA and the SPA

Supervisor, even though he was equally or better qualified to be retained and but for his age and age-stereotypical notions about his health declining with age and his relative inability to readily learn new or different duties would have been retained, Defendant has willfully violated the ADEA.

**VI.**     **Prayer for Relief**

WHEREFORE, Plaintiff is entitled to and prays for the following relief

A. declaration that Defendant has violated the ADEA;

B. equitable relief of reinstatement with expungement of his personnel file;

C. wages, salary, employment benefits, and other compensation denied or lost to him, exceeding $25,000, because of Defendant's violation;

D. prejudgment and postjudgment interest:

E. liquidated damages in an amount equal to the sum of wages, salary, employment benefits, and other compensation denied or lost to him, plus prejudgment interest:

F. costs and attorneys' fees; and

G. such other relief as the Court deems fair and equitable.

Respectfully submitted

**OF COUNSEL:**
Louis A. Jacobs (002101)
(*LAJOhio@aol.com*)
177 19th St., Apt. 9C
Oakland, CA 94612
(614) 203-1255
Fax (510) 250-9007

By: /s/ John S. Marshall_____
John S. Marshall (0015160)
(*jmarshall@marshallandmorrow.com*)
Edward R. Forman (0076651)
(*eforman@marshallandmorrow.com*)
Samuel M. Schlein (0092194)
(*sschlein@marshallandmorrow.com*)
MARSHALL AND MORROW LLC
250 Civic Center Dr., Suite 480
Columbus, Ohio 43215-5296
(614) 463-9790

Fax (614) 463-9780

## JURY DEMAND

Plaintiff demands a trial by jury on all issues and defenses triable to a jury.

By: /s/ John S. Marshall_____
John S. Marshall (0015160)